UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL SEVERANCE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-06-2467 |
| | § | |
| JERRY PATTERSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### I.     INTRODUCTION

Now before the Court are the defendants' motions to dismiss this suit (Docs. No. 18 and 35).  After considering the voluminous submissions by the parties and the governing law, the Court has decided to DISMISS the plaintiff's suit because she has not presented any ripe claims that would entitle her to the relief she seeks.  Specifically, the Court has concluded that none of her claims based on possible future enforcement actions are ripe, and the remaining claims fail as a matter of law.

### A.     The "Rolling" Beach Easement

Ultimately, this case is about whether the state of Texas can constitutionally recognize and enforce a "rolling" public beach easement.  Under Texas law, once the public has established an easement over the "dry beach," the easement expands and contracts with the natural boundaries of the beach (the mean high tide line and the natural vegetation line).  Texas courts have declared that the easement rolls, and that within those dynamic, natural boundaries, the public's easement rights are superior to the property rights of beachfront landowners.  The plaintiff, Carol Severance, is an aggrieved

landowner who claims that the easement cannot constitutionally roll. In the context of this suit, she argues that the defendants' enforcement of the public's allegedly-superior easement rights violates her constitutional property rights.

**B.     Parties and Procedural Posture**

Severance filed this suit for declaratory and injunctive relief against Texas Land Commissioner Jerry Patterson, Texas Attorney General Greg Abbot, and Galveston County District Attorney Kurt Sistrunk in their official capacities. The suit claims that the Texas Open Beaches Act, Tex. Nat. Res. Code Ann. §§ 61.001 - 61.254 (Vernon 2006) (the "OBA" or the "act"), and the defendants, through their interpretation and enforcement of the act, violate the plaintiff's rights under the federal Constitution. The plaintiff was permitted to file a Third Amended Complaint (Doc. No. 43), which is the complaint considered in connection with these motions. Though the defendants' motions are directed at particular claims asserted by the plaintiff, many of the issues are common to all the claims. The plaintiff responded to both motions, the defendants replied, and the plaintiff filed sur-replies.

**C.     Background**

Severance, who is a California resident, owns three beachfront properties on Galveston Island, each improved with a single-family home (the "rental properties"): the "Kennedy home," located at 22716 Kennedy Drive; the "Bermuda Beach home," located at 13107 Bermuda Beach Drive; and the "Gulf home," located at 21238 Gulf Drive. Severance purchased the Gulf home on or about March 1, 2005, and purchased the Kennedy and Bermuda Beach homes on or about April 5, 2005.

The parties agree that, at least when the suit was filed, the Kennedy and Bermuda Beach homes were entirely seaward of the vegetation line, and the Gulf home was

partially seaward of the line.  This is a somewhat precarious position; under Texas law, the public has established an easement over most of portions of the "dry beach," which is defined as the sandy land between the mean high tide mark and the vegetation line.[1]  Because the vegetation line has moved landward, portions of Severance's real properties (including all or portions of the houses) are now on the public beach.  Under the OBA, state officials can petition the courts for an order to remove "any improvement, maintenance, obstruction, barrier, or other encroachment on a public beach."  § 61.018.

When Severance purchased her rental properties in March and April of 2005, she had reason to know that the location of the vegetation line could pose a problem.  The properties' land sale contract disclosed that the vegetation line "'customarily marks the landward boundary of the public [beach] easement,' and that 'structures . . . that become seaward of the vegetation line as a result of natural processes are subject to a lawsuit by the state of Texas to remove the structures.'"  Third Am. Compl. ¶ 38.  Previously, in 1999, the Land Commissioner had listed the Kennedy and Bermuda Beach homes as entirely seaward of the vegetation line and referred them to the Attorney General for possible removal, though no litigation was filed at that time.

In June of 2004, pursuant to the OBA, the Land Commissioner entered a two-year moratorium order temporarily suspending any removal actions against a list of 116 coastal properties, including the Kennedy, Bermuda Beach, and Gulf homes.  *See* Press Release, Tex. Gen. Land Office, Patterson Takes Action to Enforce Texas Open Beaches Act (June 8, 2004)[2]; *see also* § 61.0185 (authorizing moratorium orders).  While this

---

[1] Under the OBA, and throughout this opinion, the term "'Line of vegetation' means the extreme seaward boundary of natural vegetation which spreads continuously inland." Tex. Nat. Res. Code Ann. § 61.001(5).
[2] *Available at* http://www.glo.state.tx.us/news/archive/2004/events/pdfs/Moratorium_Press_Release-6-2-04.pdf.

moratorium order was in place, Severance purchased the rental properties. She claims that at the time she purchased the Bermuda Beach home, the vegetation line had moved entirely seaward of the house.

In May and June of 2006, state officials conducted a survey of the vegetation line. They determined that the Kennedy and Bermuda Beach homes were 100% seaward of the vegetation line, and the Gulf home was approximately 50% seaward of the line. The General Land Office contacted Severance and informed her that the moratorium would be lifted and that state officials could file enforcement actions seeking removal of any portion of the homes that encroached on the public beach "at any time." The GLO also offered financial assistance for removing the homes. On June 7, 2006, the moratorium order expired and the Land Commissioner announced his "Plan for Texas Open Beaches," which stated that the GLO would continue to use litigation, as necessary, to remove encroachments on the public beach.

Severance filed this federal action in July of 2006 seeking declaratory and injunctive relief preventing the Defendants from enforcing the public easement against her rental properties. She claims that defendants' have violated, and will continue to violate, her rights under the Fourth, Fifth, and Fourteenth Amendments to the federal Constitution. Specifically, she alleges (1) regulatory and (2) "physical invasion" takings for public use without just compensation; (3) violation of substantive due process; and (4) an unreasonable seizure of her property. The defendants have moved to dismiss all these claims. First, they argue that this Court lacks (or should not exercise) jurisdiction because of sovereign immunity and ripeness. Second, they argue that the plaintiff has not stated a claim upon which relief can be granted.

While this action was pending, the Land Commissioner announced or clarified his OBA enforcement policy. Under the policy,

> The GLO will give first priority for removal lawsuits against the owners of structures that (1) significantly restrict or impair the public's access to or use of the beaches, (2) pose an imminent public health and safety hazard, or (3) are located on state-owned submerged land. The GLO will give low priority to initiating removal lawsuits for other existing structures on the public beach that are not involved in litigation with the State. If the GLO determines that a house or structure meets one of the three criteria for enforcement under this policy, the GLO's intent is to work with the property owner to resolve the situation by exploring options, such as relocation assistance, where practicable.

Tex. Gen. Land Office, *Texas Open Beaches Enforcement Policy*, http://www.glo.state.tx.us/coastal/beachdune/openbeaches.html (Sept. 18, 2006).

## II.   LEGAL STANDARD

If an actual, justiciable case or controversy exists and the case falls within this Court's jurisdiction, then the Court may enter both declaratory and injunctive relief under the Declaratory Judgment Act. 28 U.S.C. §§ 2201-02 (2000). However, Severance must establish jurisdiction and present a justiciable case. § 2201 (requiring "a case of actual controversy within [the court's] jurisdiction"). Further, the Declaratory Judgment Act vests broad discretion in the district courts, including the discretion to dismiss the case at an early stage. "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

Sovereign immunity and ripeness are issues of law that implicate this Court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *see also Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005) (state sovereign immunity); *Urban*

*Developers, LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (ripeness). A district court may resolve jurisdictional questions based on the pleadings alone, the pleadings plus the undisputed facts, or the pleadings, undisputed facts, and the disputed facts as resolved by the Court. *See Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 n.17 (5th Cir. 2005); *Robinson v. TCI/US West Commc'ns, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

A complaint fails to state a claim "only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173 (5th Cir. 2006) (internal quotation omitted); *see also* Fed. R. Civ. P. 12(b)(6). Typically, the 12(b)(6) inquiry looks only at the pleadings and those are construed in the light most-favorable to the plaintiff. All well-pleaded facts are assumed to be true.[3]

### III.   ANALYSIS AND DISCUSSION

At the heart of all of Severance's claims is an assumption that the state of Texas cannot constitutionally recognize or enforce a "rolling" public beach easement. The Court has determined that the defendants are not immune from Severance's suit, but her suit should be dismissed because the house removal claims are unripe and the other easement claims are substantively deficient.

### A.   Sovereign Immunity

The state defendants, Attorney General Abbot and Land Commissioner Patterson, claim Eleventh Amendment immunity from some or all of Severance's claims. *See* U.S.

---

[3] For resolution of this motion, the Court has accepted as true Severance's concession (in her responses to the motions, but absent from her complaint) that the public previously established an easement over the entire dry beach, up to the vegetation line as it existed at some point in the past, on the rental properties. It is relevant both to the ripeness inquiry and to the discretionary dismissal inquiry.

Const. amend. XI ("The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."). But this suit is permissible under a straightforward application of *Ex parte Young*, 209 U.S. 123 (1908), and its progeny.

Under the heading of sovereign immunity, the defendants have raised several arguments about the substantive validity of Severance's claims. But "the inquiry into whether suit lies under *Ex parte Young* does *not* include an analysis of the merits of the claim." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Sovereign immunity does not bar a "complaint [that] alleges an ongoing violation of federal law and seeks [equitable or declaratory] relief properly characterized as prospective." *Id.* at 645. Here, Severance seeks to enjoin the defendants from taking certain actions that allegedly violate the federal Constitution. Therefore, *Ex parte Young* applies and the state defendants are not immune.

**B.     Ripeness**

The ripeness inquiry asks whether a plaintiff should be allowed to obtain relief even though the challenged statute or rule has not yet been enforced. The "doctrine counsels against premature adjudication by distinguishing matters that are hypothetical or speculative from those that are poised for judicial review." *LeClerc v. Webb*, 419 F.3d 405, 413-14 (5th Cir. 2005) (internal quotations omitted). "[T]hrough the avoidance of premature adjudication," federal courts avoid "entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "Even actions for declaratory relief, which by design permit pre-enforcement review, require the presence of an actual case or controversy." *LeClerc*, 419 F.3d at 414 (internal quotations omitted).

To determine whether this case is ripe for review, this Court must consider "both the fitness of the issues for judicial determination and the hardship to the parties of withholding consideration."  *Abott Labs.*, 387 U.S. at 148.  "In making its determination, the court should evaluate three factors: '(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further [enforcement] action; and (3) whether the courts would benefit from further factual development of the issues presented.'"  *Coliseum Square Ass'n, Inc., v. Jackson*, 465 F.3d 215, 244-45 (5th Cir. 2006) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (2006)), *petition for cert. filed*, 75 USLW 3500 (Mar 13, 2007) (No. 06-1248).  Under those factors, Severance's house-removal claims are not ripe, but her "continuing invasion" claim is (at least arguably) ripe.

1. **House Removal**

The first factor, hardship from delayed review, is satisfied where enforcement is certain but merely delayed.  *See, e.g.*, *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974) ("Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect.").  But in the present case, removal of Severance's houses is far from certain.  The defendants cannot take any action to enforce the OBA without a judicial order.  *See* Tex. Nat. Res. Code Ann. § 61.018.  The history of the rental properties belies Severance's argument that a removal action is inevitable.  In 1999, the Land Commissioner identified the Bermuda Beach and Kennedy homes as completely or partially seaward of the vegetation line and referred them to the Attorney General for possible enforcement, but the Attorney General decided not to file an enforcement action at that time.  That very well may happen in the

present case. Though an enforcement action under the OBA might be filed at any time, the published enforcement policy of the Land Commissioner indicates that he intends to avoid litigation if possible, and that he will not disturb structures that do not hinder the public's use of and access to the beach.

To manufacture ripeness and certainty, Severance has taken a position seemingly contrary to her own interest: she argues that District Attorney Sistrunk has absolutely no discretion and must file suit to remove her houses because they are on the beach. The OBA provides,

> Any county attorney, district attorney, or criminal district attorney, or the attorney general at the request of the commissioner, *shall* file in a district court . . . a suit to obtain either a temporary or permanent court order or injunction . . . to remove . . . any improvement, maintenance, obstruction, barrier, or other encroachment on a public beach.

§ 61.018(a) (emphasis added). While Sistrunk is authorized to file an enforcement action, he is not required to do so. Severance's interpretation of the provision flies in the face of the facts. Though 116 homes are on the most recent list developed by the Land Commissioner, Severance has not cited a single example of an enforcement action filed by a county, district, or criminal district attorney. There are several published appellate decisions interpreting the OBA; if they are any guide, district attorneys rarely if ever file suit. The published decisions all involve either enforcement actions filed by the Attorney General or declaratory judgment suits filed by the landowner. *See Feinman v. State*, 717 S.W.2d 106, 107 (Tex. App.—Houston [1st Dist.], 1986, writ ref'd n.r.e.) (declaratory judgment); *Moody v. White*, 593 S.W.2d 372, 374 (Tex. Civ. App.—Corpus Christi 1980, no writ) (attorney general); *Arrington v. Mattox*, 767 S.W.2d 957 (Tex. App.—Austin 1989, writ denied) ("*Arrington I*") (same); *State v. Markel*, 363 S.W.2d 332, 333 (Tex. Civ. App.—Houston 1963, no writ) (same); *cf. Seaway Co v. Attorney Gen.*, 375 S.W. 2d

923, 926 (Tex. Civ. App.—Houston 1964, writ ref'd n.r.e.) (attorney general and district attorney).

Notwithstanding the presence of the term "shall," the only reasonable interpretation is that all the authorized attorneys have discretion to determine when litigation is appropriate. The Texas Legislature would not deprive its constituents of the informed judgment of their elected public attorneys. Where structures do not truly interfere with the public's use of the beach, then it is reasonable to believe that the authorized officials will use their discretion prudently. As to her claims based on potential house removal, Severance will not suffer hardship when those claims are dismissed. She can raise any of her federal claims as a defense to an enforcement action, if one is ever filed.

More importantly, this particular case, the entire OBA enforcement regime, and judicial economy would benefit from further factual development before Severance's constitutional claims are adjudicated. If, as Severance contends, the federal Constitution prohibits enforcement of the easement against an "obstruction" that is a sufficient distance from the high tide line, or from that portion of the beach historically used by the public, then a decision rendered today will have little relevance five, ten, or fifteen years from now when the high and low tide boundaries, the vegetation line, and the patterns of public use have shifted. Similarly, a ruling in this case would do nothing to clarify the constitutional limits on OBA enforcement on other homes, where the relative positions of the natural boundaries and the public's use would be different. In all likelihood, OBA enforcement would be hindered if the defendants are forced to defend this and other

preemptive actions, due to the diversion of resources that would otherwise be spent litigating against structures that truly interfere with the public's actual use of the beach.

To the extent Severance's claims are founded on the possibility that one or more of her houses might be removed, her claims are not ripe. Severance would suffer little if any hardship by dismissal, because at worst she faces the possibility of a full and fair judicial hearing where she can raise her federal claims. Even if this suit proceeded to judgment, the "final" judgment would only stand as long as the fluid natural boundaries retained their present positions. This would not clarify the parties' relative rights, but would instead create confusion when those boundaries inevitably shifted landward or seaward. Federal courts should not adjudicate constitutional limits on state power where the alleged harm is speculative and the judgment would hamper permissible enforcement activity.

### 2. Continuing Physical Invasion

Severance draws a distinction between her claims based on possible house removal and her claims based on the "imposition" of the beach easement. On the one hand, many of the ripeness concerns discussed previously apply with equal force to the imposition claims. The defendants have not sought to enforce the easement against Severance's properties in any way, whether through a denial of a permit or through an action to punish or prohibit activities under section 61.018. But, on the other hand, this claim or these claims present a different kind of "hardship"—a command to forego otherwise protected activity, backed by the threat of punitive sanctions. *Cf. Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (describing the plaintiff's dilemma of choosing "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming

enmeshed in a criminal proceeding"); *see generally* Erwin Chemerinsky, *Federal Jurisdiction* 116-20 (4th ed. 2003). At least arguably, Severance has demonstrated that kind of hardship because the OBA forbids her from excluding the public from portions of her property seaward of the vegetation line, and there are penalties for violation. *See* § 61.013 (prohibitions); § 61.018(c) (civil penalty of up to $1000 per day).

This opinion is not the first to distinguish between claims based on house removal and the more general easement imposition claim. In a later-vacated opinion, this Court concluded, "If a structure is existing at the time the easement fastens itself around the building, the public only gets a right to use the property around the structure." *Hirtz v. Texas*, 773 F. Supp. 6, 10 (S.D. Tex. 1991), *rev'd on other grounds*, 974 F.2d 663 (5th Cir. 1992). Clearly, the federal Constitution places limits on the defendants' enforcement of the public's beach easement. *See*, *e.g., Mikeska v. City of Galveston*, 451 F.3d 376 (5th Cir. 2006) (holding that city's decision to withhold utilities from homes on the beach must satisfy substantive due process and equal protection). For the reasons stated above, Severance's constitutional claims that depend upon facts specific to her properties are not ripe. The record is not fit for judicial determination because it is not clear if, when, how, and why the defendants would enforce the OBA against her.

However, Severance also raises more generalized attacks against the migratory nature of the beach easement. If the easement were a creature of statute, this would be a challenge to its constitutionality "on its face." If her claim were meritorious, it would be ripe, because the defendants have recognized and asserted a public easement where none existed previously, and she would be forbidden from excluding the public (a lawfully protected activity).

## C.     Constitutionality of "Rolling" Easement

Severance asks this Court to overturn a doctrine of Texas's common law of property. Though she has attempted to fashion this suit as a challenge to the OBA, or to the defendants' "current interpretation" of the OBA, the rolling beach easement exists separate and apart from the statute or its interpretation. Texas's recognition of an easement that moves with its natural boundaries does not violate any of the constitutional provisions Severance has raised.

The OBA itself does not establish or create the easement. The act authorizes state officials to enforce the public's beach easement, but its scope is limited to the state-owned wet beach and those portions of the dry beach where "the public has acquired a right of use or easement . . . by prescription, dedication, or has retained a right by virtue of continuous right in the public." § 61.012, § 61.013(a). In other words, to enforce the public's easement over a specific parcel of land, the defendants must prove that the easement exists and was established by the common law mechanisms of prescription, dedication, or "continuous right." In an OBA enforcement action, there is a presumption that the public has acquired an easement over any area on the dry beach, but landowners like Severance may present evidence to rebut this presumption.[4]  *See* § 61.020.

Severance's real complaint lies with the Texas courts, which have repeatedly held that the beach easement, once established up to the vegetation line, expands and contracts along with the movement of that boundary. *See Arrington v. Tex. Gen. Land Office*, 38 S.W.3d 764, 766 n.4 (Tex. App.—Houston [14th Dist.], 2001). Texas courts have

---

[4] Under *Arrington v. Tex. Gen. Land Office*, 38 S.W.3d 764, 765-66 (Tex.App.—Houston [14 Dist.], 2001), the presumption could only be rebutted by proof that the public never established (or lost) its easement to the whole beach as it existed at the time of establishment. Once the easement is established up to the vegetation line, then it "rolls" with the line as a matter of law.

previously rejected constitutional claims similar to those raised by Severance. *See, e.g.*, *Arrington I*, 767 S.W.2d at 958-59 (rejecting takings clause challenges). Because the general claims, which would entirely invalidate the rolling easement, are (arguably) ripe and properly presented for review at this time, this Court must wade into the waters previously traveled by the state courts.

These general claims all share the same fundamental substantive problem: to succeed under a takings, substantive due process, or unreasonable seizure claim, Severance must first demonstrate a constitutionally protected property interest. But, "[t]he constitution does not create property interests; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bryan v. City of Madison*, 213 F.3d 267, 275 (5th Cir. 2000) (quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987)). If a property interest exists under state law, then the state cannot appropriate that interest without providing due process and just compensation.

But under Texas law, Severance's allegedly-invaded interests in her rental properties are (and always have been) subject to the public's superior interest in its pre-existing easement. The state is not trying to create an easement over a parcel that had never previously been burdened. *Cf. Dolan v. City of Tigard*, 512 U.S. 374, 380 (1994) (invalidating a permit condition that the owner "dedicate an additional 15-foot strip of land adjacent to the floodplain as a pedestrian / bicycle pathway"); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 827-29 (1987) (invalidating a permit condition that the owners agree to convey a beach-access easement). Here, the easement already existed over the dry beach when Severance purchased the properties, and (as Severance now admits)

extended from the seaward boundary (the mean high tide line) to the landward boundary (the vegetation line). She cannot claim ignorance of the easement, because the purchase contract disclosed that the vegetation line would serve as a boundary for the easement. The natural movement of the beach's boundaries may result in a temporary (or long-term) expansion of the physical area covered by the easement, but it may also result in a contraction of the covered area. This natural movement does not work a constitutional wrong.

This conclusion is consistent with *Lucas v. South Carolina Coastal Commission*, 505 U.S. 1003 (1992). In that case, the Court held that an owner suffered a regulatory taking when, after he purchased beachfront properties, South Carolina enacted a total ban on all beach construction. *Id.* at 1007-09. But the Court emphasized the fact that the ban on construction was created *after* Lucas purchased his properties:

> Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with. . . .
>
> Where "permanent physical occupation" of land is concerned, we have refused to allow the government to decree it anew (without compensation), no matter how weighty the asserted "public interests" involved, *though we assuredly would permit the government to assert a permanent easement that was a pre-existing limitation upon the land owner's title*.

*Id.* at 1027, 1028-29 (emphasis added, citations omitted). The restrictions in *Lucas* failed because they did not "inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership." *Id.* at 1029. Here, the public's rolling beach easement was established long before Severance ever purchased her rental properties, and the easement is one of the "background principles" of Texas littoral property law. She has not suffered a taking

because her right to exclude the public never extended seaward of the dynamic, natural boundary of the beach.

Finally, the Supreme Court's cases recognizing and applying the principles of accretion and erosion demonstrate that the federal Constitution does not guarantee or require static real property boundaries. S*ee, e.g.*, *Ohio v. Kentucky*, 444 U.S. 335, 337 (1980) (noting that in the "usual" and "customary" situations when a river forms the boundary between two states, "the well-recognized and accepted rules of accretion and avulsion attendant upon a wandering river have full application"). Severance may not like this aspect of Texas property law, but nothing in the federal Constitution forbids it.

### D. Constitutional Limitations on OBA Enforcement

Severance is not left without recourse. In the first instance, she and similarly situated landowners can petition the elected officials who have the discretion to decide whether to file an enforcement action. That discretion is not unlimited: enforcement activities must be rationally related to the goal of protecting beach access, and all similarly situated properties must generally be treated the same way. *Mikeska*, 451 F.3d at 379-82. If the defendants seek injunctive relief in state court that would not be authorized under ordinary Texas easement law, then Severance may present constitutional defenses similar to the claims she has attempted to raise here. All of these federal claims, along with legal and equitable state law claims, can and should be raised in a state court enforcement action, if one is ever filed.

### IV. CONCLUSION

Under Texas common law, the public's beach easement rolls and is superior to Severance's interest in her burdened properties. The rolling easement is not inconsistent with the federal Constitution. There are constitutional limits on the defendants'

enforcement of the easement, but no claim based on possible enforcement is ripe for adjudication at this time. If, at some point in the future, the defendants attempt to enforce the easement in an unlawful fashion, Severance may raise her constitutional claims as a defense. A declaratory judgment (and an accompanying injunction) entered at the present time would not bind the parties in the future, because the relevant boundaries probably would have shifted. Therefore, this suit should be **DISMISSED**.

It is so Ordered.

Signed this 2nd day of May, 2007.

Kenneth M. Hoyt
United States District Judge